## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

          v.

DAVID RODA and ANDREW LARKIN,

                    Defendants.

Civil Action No. 22-cv-02317

**Jury Trial Demanded**

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendants David Roda and Andrew Larkin and alleges as follows:

### SUMMARY

1.      This action alleges insider trading by David Roda and his childhood friend, Andrew Larkin, based on confidential information Roda obtained while employed at Penn Interactive Ventures, LLC ("Penn Interactive"), a subsidiary of gaming operator Penn National Gaming, Inc. ("Penn National").

2.      In the summer of 2021, in the course of his employment at Penn Interactive, Roda learned that Penn National was involved in confidential negotiations to acquire Score Media and Gaming, Inc. ("SCR"), a digital media and sports betting provider. Roda's supervisor explicitly warned him against trading on and sharing the information.

3.      Nevertheless, in the weeks and days leading up to the announcement of the transaction, Roda purchased 500 short-dated, out-of-the-money SCR call option contracts.

4.      Additionally, Roda tipped his close friend Larkin about the transaction, directing Larkin to download an encrypted messaging application so that they could "speak freely" about

their illicit trading.  On the basis of the inside information that he obtained from Roda, Larkin purchased 375 shares of SCR common stock.

5.     On August 5, 2021, Penn National and SCR announced that they had entered into an agreement whereby Penn National would acquire SCR for approximately $2 billion in cash and stock (the "Acquisition").  In response to the announcement, SCR's stock price shot up nearly 80%.

6.     The same day, Roda and Larkin sold all of their SCR holdings.

7.     Roda obtained illicit profits of approximately $560,762, while Larkin made approximately $5,602.

8.     Following the announcement of the Acquisition, Larkin and Roda used the encrypted messaging app to correspond about the profits they made from their unlawful trading. Larkin mused that Roda could use the money he had made to purchase a beach house.  Roda responded, "ya if the SEC doesn't come take it and put me in jail."

9.     By engaging in the conduct described in this Complaint, Roda and Larkin each violated, and unless enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

10.     The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d)–(e), 78u-1] seeking a final judgment that permanently enjoins Roda and Larkin from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint and that orders disgorgement, prejudgment interest, civil monetary penalties, and such other and further relief the Court may deem just and appropriate.

11.     The Court has jurisdiction pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)–(e), 78aa].

12.     Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

13.     Venue is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts, practices, and courses of business constituting the alleged violations occurred within the Eastern District of Pennsylvania.  Both Roda and Larkin reside in this District.

## DEFENDANTS

14.     Roda, age 36, is a Philadelphia, Pennsylvania resident.  During the relevant period, Roda was employed as the Director of Backend Architecture at Penn Interactive.

15.     Larkin, age 36, is a Philadelphia, Pennsylvania resident.

## RELEVANT ENTITIES

16.     Penn National is a Pennsylvania corporation headquartered in Wyomissing, Pennsylvania and is an owner and provider of gaming, racing, and retail and online sports betting operations.  Its common stock is traded on the NASDAQ under the ticker PENN.

17.     Penn Interactive is a Delaware limited liability company with a principal place of business in Wyomissing, Pennsylvania.  Penn Interactive is a wholly-owned subsidiary of Penn National and the entity through which Penn National operates its online sports betting operations.

18.     Score Media and Gaming is a British Columbia corporation headquartered in Toronto, Ontario, Canada.  SCR offers digital media and sports betting products.  On October 19, 2021, Penn National acquired SCR for approximately $2 billion in cash and stock.  Prior to the

Acquisition, SCR's common stock was traded on the Toronto Stock Exchange and the NASDAQ under the ticker SCR.

## TERMS USED IN THIS COMPLAINT

19.     Common stock is a form of equity ownership in a corporation.

20.     Option contracts are financial instruments that offer the buyer an opportunity to buy or sell—depending upon the type of option contract—an underlying asset such as stock.

21.     A "call option" is a contract that entitles the holder to purchase a security under specified terms.  The holder of a call option has the right, but not the obligation, to buy the specified security at a set price (the "strike price") on or before the expiration date for that option.

22.     Generally, the holder of a call option benefits when the price of the underlying stock increases.  Thus, a trader might purchase a call option if he or she expects the underlying asset's price to exceed the strike price before the expiration date.

23.     A call option is considered "out of the money" when the current market price of the underlying stock is lower than its strike price.

24.     A "limit order" is an order to buy or sell a stock or option at a specific price or better.  A buy limit order can only be executed at the limit price or lower.  A limit order is not guaranteed to execute.

## FACTS

25.     Roda began working for Penn Interactive in July 2019, as a programmer for its online sportsbook application.  In June 2021, he was promoted to Director of Backend Architecture.  In this position, Roda continued his work as a programmer while overseeing a group of other employees who were also working on the sportsbook application.

26.     Roda owed a duty not to use Penn Interactive's or Penn National's confidential information for his own benefit or for the benefit of persons outside the company.

27.     Roda was subject to a Confidentiality, Non-Compete, and Non-Solicit Agreement (the "Confidentiality Agreement") that prohibited him from using "directly or indirectly for any reason whatsoever" confidential information he obtained during the course of his employment. The agreement listed information about "potential expansions and acquisitions" as an example of confidential information he might obtain during his employment.

28.     Roda understood his obligations under the Confidentiality Agreement.

29.     Roda was also subject to Penn National's Insider Trading Policy (the "Insider Trading Policy"), which prohibited employees of Penn National and Penn Interactive "from misusing material financial or other information that has not been publicly disclosed by the Company."  The Insider Trading Policy provided that an employee could not "trade in or tip others regarding securities of any other company [based on information] that was obtained in the course of his or her involvement with the Company unless he or she is certain that he or she does not possess any material non-public information about that company, such as information about a pending acquisition."

30.     Roda was aware of the Insider Trading Policy and generally understood that he was not permitted to trade on the basis of material, non-public information he learned in the course of his employment.

**A.     Roda Learns That Penn National Is Pursuing SCR**

31.     In March 2021, Penn National and SCR began discussing a potential transaction. In late June 2021, Penn National informed SCR that it was willing to acquire SCR at a price of $36 per share, subject to, among other things, conducting due diligence.  Penn National and Penn Interactive tasked a member of Roda's group ("Employee-1") with working on the due diligence.

32.     The project was highly confidential.  Among other precautions that Penn National and Penn Interactive took to maintain the confidentiality of the information, Penn National and Penn Interactive limited the number of individuals who had access to information about the Acquisition and used a code name for the Acquisition in order mask Penn National's interest in SCR.

33.     On July 1, 2021, Roda met with Employee-1 to discuss their work.  At the meeting and as part of their discussion about work, Employee-1 informed Roda that Penn National was seeking to acquire SCR.

34.     The next day, July 2, 2021, Roda sought out more information.  Roda contacted his supervisor ("Employee-2") to ask questions about Employee-1's work and request that Employee-2 add him to the due diligence team.

35.     Employee-2 told Roda that they would revisit the issue of adding him to the due diligence team in a week, but that if Roda were added, he would be "on blackout."  That is, he would be unable to trade because he would be in possession of material, non-public information.

**B.     Roda First Trades SCR Options**

36.     On the morning of July 7, 2021, Roda bought and sold several series of SCR call options, ending the day holding 50 SCR call options.

37.     Specifically, Roda held 25 call options with a September 17, 2021 expiration date and a strike price of $22.50 and 25 call options with the same expiration date, but a strike price of $30.

38.     On July 8, 2021, Penn National and Penn Interactive added Roda to the due diligence team for the Acquisition.  In doing so, Employee-2 warned Roda about trading on, or sharing, any confidential information he learned in the course of his work.

39.     Around the same time, Penn National's Chief Legal Officer sent Roda an "over the wall" email warning him that he was in possession of "material non-public information" about the Acquisition and making clear that he was subject to the Insider Trading Policy.

40.     Shortly after his conversation with Employee-2, Roda sold the SCR options he had purchased the day before.  Roda lost approximately $1,600 on these trades.

## C.     Roda Tips Larkin and Buys More SCR Options

41.     Roda and Larkin have been close friends since they were children growing up in Lancaster, Pennsylvania.  The two socialized together, played basketball together nearly every week, and often discussed issues affecting their personal and professional lives.

42.     On July 11, 2021, Roda saw Larkin at a party at a mutual friend's house.

43.     At the party, Roda told Larkin that Penn National was in talks to acquire SCR. Roda shared this information with Larkin with the expectation that Larkin would trade on it.

44.     Larkin knew that the information Roda had provided to him was confidential, market-moving information that Roda had obtained in the course of his employment and improperly shared with Larkin.  Larkin also knew that Roda had relayed the information to Larkin for the purpose of having Larkin trade on it.

45.     The next day, July 12, 2021, Larkin texted Roda with questions about how call options work.  Larkin confirmed that he was "looking at options for the stock [they] talked about at [the friend's party]."

46.     Later that day, Larkin determined he did not have the ability to trade options in his brokerage account, and so he purchased 375 shares of SCR common stock for $18 per share, spending $6,750.

47.     That night, Roda sent Larkin a link to download an encrypted messaging app for his phone.  Roda instructed Larkin to "install this when you get a chance so we can speak freely."

48.     Using the encrypted messaging app, Roda and Larkin discussed ways Roda could profit on the inside information he had obtained and not get caught, including by having Larkin trade on Roda's behalf.

49.     Ultimately, Roda decided to place more trades in his own account.  On July 22, 2021, he purchased 100 SCR call options with an expiration date of August 20, 2021 and a strike price of $17.50.  He also purchased 100 SCR call options with an expiration date of September 17, 2021 and a strike price of $20.  In making the two trades, Roda spent approximately $13,633.

50.     The 200 call options Roda acquired on July 22, 2021 were out of the money.  SCR's stock price reached a high of $15.53 that day.

51.     On July 27, 2021, using the encrypted messaging app, Roda informed Larkin that Penn National was looking to announce the Acquisition on August 5, 2021.

52.     On August 3, 2021, using the encrypted messaging app, Roda informed Larkin that earlier that day he had a phone call with the head of Penn Interactive, who told Roda about "things coming down the pike and big things in store," which Roda told Larkin he understood to be a reference to the Acquisition.

53.     After his phone call with the head of Penn Interactive, on August 3, 2021, Roda attempted to purchase more SCR call options.  Specifically, Roda entered a limit order to purchase 200 SCR call options with an expiration date of August 20, 2021 and a strike price of $25.  The limit order expired unfilled.

54.     The same day, August 3, 2021, Larkin sought to add the ability to trade options to his brokerage account.

55.     The next morning, August 4, 2021, at 10:26 a.m., using the encrypted messaging app, Roda informed Larkin, "apparently we are announcing the score acquisition tomorrow."

56.     Minutes later, at 10:28 a.m., Roda entered and executed an order to buy 300 SCR call options with an expiration date of August 20, 2021 and a strike price of $22.50.  Roda spent approximately $7,302 on the 300 SCR call option contracts.

57.     The 300 SCR call options that Roda purchased on August 4, 2021 were out of the money.  SCR's stock reached a high of $18.20 that day.

58.     In total, between July 22, 2021 and August 4, 2021, Roda spent approximately $20,935 to acquire 500 out-of-the-money SCR call options with expiration dates of August 20, 2021 and September 17, 2021 based on material, non-public information about the Acquisition.

59.     Meanwhile, Larkin was waiting for approval to trade options in his brokerage account.  Ultimately, Larkin's request was denied, and he made no additional purchases of SCR securities beyond the 375 shares that he purchased on July 12, 2012 for approximately $6,750.

**D.     Penn National and SCR Announce the Acquisition; Roda and Larkin Profit**

60.     On August 4, 2021, SCR's share price closed at $18.14.

61.     On August 5, 2021, before the markets opened, Penn National and SCR announced that they had entered into an agreement whereby Penn National would acquire SCR for approximately $2 billion in cash and stock.

62.     That day, SCR's common stock opened at $29.55 per share, rose as high as $33.22, and closed at $32.64, a nearly 80% increase from the prior day's closing price.

63.     The same day, Roda and Larkin sold all of their SCR holdings.

64.     Using material, non-public information he had misappropriated from Penn Interactive and Penn National, Roda turned the approximately $20,935 he spent on the 500 out-of-the-money call options into approximately $581,697, netting profits of approximately $560,762.

65.     Larkin, using Roda's material, non-public information, turned the approximately $6,750 he spent on 375 SCR shares, into approximately $12,352, for a profit of approximately $5,602.

66.     Following the announcement, on August 5, 2021, using the encrypted messaging app, Roda sent Larkin a screen shot of the value of the options he purchased.  Larkin responded, "Holy shit."  Unsatisfied with the illicit profits he had made, Roda responded that he "should've gone harder."

67.     In another message on August, 5, 2021, Larkin suggested that Roda could use the money to purchase a beach house.  Roda responded, "ya if the SEC doesn't come take it and put me in jail."

**E.      Roda and Larkin Violated the Federal Securities Laws**

68.     At all relevant times, Roda owed a duty not to use Penn Interactive's and Penn National's confidential information for his own benefit, including by trading on the basis of such information or sharing such information with others so that they could benefit by trading on the basis of such information.

69.     The information about the Acquisition was confidential.  Penn National and Penn Interactive established policies and procedures designed to protect such information and to prohibit its employees from trading on such information.

70.     The information about the Acquisition was material.  A reasonable investor would have viewed information relating to the Acquisition, including the fact of Penn National's pursuit

of SCR and the likely timing of the transaction, as being important to his or her investment decision and/or significantly altering the total mix of information available to the public.

71.     Roda knew, or was reckless in not knowing, that the information he acquired about the Acquisition was material, non-public information.

72.     Roda knew, or was reckless in not knowing, that he had a duty not to trade on the basis of, or share, the material, non-public information about the Acquisition that he learned during the course of his employment.

73.     In breach of his duty, Roda traded on the basis of, and shared with Larkin, the material, non-public information about the Acquisition that he learned during the course of his employment.

74.     Roda had a close personal friendship with Larkin.

75.     Roda received a personal benefit from disclosing to Larkin the material, non-public information about the Acquisition that he learned during the course of his employment. Roda shared the information with Larkin so that Larkin could trade in his own account for his own benefit and trade on behalf of Roda for Roda's benefit.

76.     Larkin obtained material, non-public information about the Acquisition from Roda.

77.     Larkin knew, or was reckless in not knowing, that the information he acquired from Roda about the Acquisition was material, non-public information.

78.     Larkin knew, or was reckless in not knowing, that Roda shared the information with Larkin so that Larkin could trade in his own account for his own benefit and trade on behalf of Roda for Roda's benefit.

79.     Larkin knew, or was reckless in not knowing, that Roda had obtained the information about the Acquisition during the course of his employment and was breaching a duty by sharing the information with Larkin.

80.     When Roda tipped the material, non-public information about the Acquisition to Larkin, Larkin assumed Roda's duty to keep the information confidential and to refrain from trading on it.  Larkin knowingly breached this duty by trading on the basis of the material, non-public information he learned from Roda.

81.     Roda and Larkin, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this Complaint.

## CLAIM FOR RELIEF

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
### (Against Both Defendants)

82.     The SEC re-alleges and incorporates by reference the allegations in paragraphs 1 – 81, as if they were fully set forth herein.

83.     By engaging in the conduct described above, Roda and Larkin, directly or indirectly, in connection with the purchase or sale of securities, and by use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, has, knowingly or recklessly:

      a.     employed a device, scheme, or artifice to defraud;

      b.     made an untrue statement of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

      c.        engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

84.      By reason of the foregoing, Roda and Larkin have violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently restraining and enjoining Roda and Larkin from directly or indirectly engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Roda and Larkin to disgorge their ill-gotten gains and pay prejudgment interest thereon;

**III.**

Ordering Roda and Larkin to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**IV.**

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws.

Dated:        June 13, 2022                     Respectfully submitted,


                                                s/ Spencer Willig
                                                Gregory R. Bockin
                                                Julia C. Green
                                                Spencer Willig (NY Bar No. 4897443)
                                                Norman P. Ostrove
                                                U.S. SECURITIES AND EXCHANGE
                                                COMMISSION
                                                Philadelphia Regional Office
                                                1617 JFK Boulevard, Suite 520
                                                Philadelphia, PA 19103
                                                Phone: 215-597-3100
                                                Email: WilligS@sec.gov